2814 Food Corp., Respondent, *v.* Hub Bar Building Corporation, Appellant.

First Department, November 24, 1970.

*David I. Goldblatt* of counsel (*Mary Ellen Perri* with him on the brief; *Proskauer Rose Goetz & Mendelsohn,* attorneys), for appellant.

*Herbert J. Bliss* of counsel (*Egan & Bliss*, attorneys), for respondent.

*Per Curiam.* In June, 1963 the plaintiff as tenant and the defendant as landlord entered into a lease for premises located at Broadway and West 109th Street in Manhattan, for an initial term of 10 years. Upon the execution of the lease the tenant paid to the landlord the total sum of $37,350 representing security in the amount of $34,600 and one month's rent of $2,750.

At the time of the execution of the lease the property was improved with four stores and a garage. The lease however, provided that the premises were to be used as a supermarket and in order to adapt the premises for such use both the landlord and the tenant undertook to complete certain renovations of the premises.

The date upon which the term of the lease was to begin, and the time when the tenant's obligation to pay rent accrued were governed by paragraph 37th of the lease which provided as follows: "37th. It is agreed that the term of this lease shall commence from such date as the landlord completes such work in the demised premises on its part to be done and performed * * * notice of which shall be given by the landlord to the tenant by certified mail * * * and rent for the demised premises shall commence sixty days thereafter or on such date as the tenant opens the demised premises for business, whichever date shall occur sooner, it being understood and agreed that at the time said rent shall commence the landlord shall have a temporary or final Certificate of Occupancy for the demised premises, provided that the issuance of such temporary or final Certificate of Occupancy is not prevented by any work then to be done in the demised premises by the tenant."

On March 26, 1964, defendant pursuant to paragraph 37th sent written notice to plaintiff informing the latter that the necessary work required by the landlord had been completed and that the term of the lease commenced as of that date. Accordingly, the defendant urges that rent began to accrue no later than May 26, 1964, that being 60 days after the landlord had given notice of the completion of its work. However, after the landlord's work had been completed and while the tenant was engaged in the renovation work it was required to perform, the landlord by letter dated April 15, 1964, advised the tenant that the Board of Estimate of the City of New York had on April 9, 1964 approved a resolution to increase the capital budget to include funds to make a playground out of the leased property. Thereafter, the contractors at the tenant's direc-

tion, stopped work on the premises. On August 12, 1964, an order was entered in a condemnation proceeding vesting title to a substantial portion of the premises in the City of New York.

As stated above, plaintiff paid to the defendant $37,350 upon execution of the lease. The defendant has returned to the plaintiff the sum of $32,204.83, withholding the sum of $6,976.66 representing the aggregate rental claimed due from May 26 (60 days after notification that defendant had completed its work in the premises) through August 12, 1964 (the date title vested in the city).

Plaintiff, however, contends that the obligation to pay rent never did accrue, urging, that as a result of the action taken by the Board of Estimate in April, 1964, the purpose of the lease was frustrated and that there was necessarily a failure of consideration.

Trial Term agreed with the contention of the plaintiff, holding that the action taken by the Board of Estimate did in fact frustrate the purpose of the lease. The court noted that the parties contemplated the use of premises as a supermarket for a long period of years, during which time the tenant's business would be the source of income out of which the landlord would receive rent. Trial Term therefore concluded that the tenant, as a result of the action of the Board of Estimate, was relieved of its obligation to complete alterations and to embark on the conduct of its business, and that it further was relieved of the obligation to pay rent. It is our opinion that the trial court was incorrect in holding that the action taken by the Board of Estimate on April 9, 1964 in and of itself relieved the tenant of its obligations under the lease. The lease provides in paragraph 21st as follows: '' If the whole or any part of the demised premises shall be acquired or condemned by Eminent Domain for any public or any quasi public use or purpose, then and in that event, the term of this lease shall cease and terminate from the date of title vesting in such proceeding and Tenant shall have no claim against Landlord for the value of any unexpired term of said lease. No part of any award shall belong to the Tenant.'' The trial court, in effect, held that the purposes of the lease were frustrated by the action of the Board of Estimate. Whether or not the action by the Board of Estimate, on April 9, 1964 frustrated the purposes of the lease, is not the real issue involved. The question herein, is at what point in the process of condemnation, was the lease or obligations thereunder terminated. On that issue, the provisions of the lease, being clear and unequivocal,

are controlling. The parties determined for themselves that it would be the act of the vesting of title which would cause the termination of the lease. The holding of the trial court, which relieved the tenant of its obligations under the lease, at a point earlier in time to that of the vesting of title was therefore erroneous. The court cannot change the unequivocal terms of the contract made between the parties. (*Rodolitz* v. *Neptune Paper Prods.*, 22 N.Y. 2d 383.)

The parties themselves having agreed that it was the final act of the vesting of title that would cause a termination of the lease, there was no reason for the court not to give effect to such provision. Indeed, it would seem that the provisions of the lease (par. 21st) were in accord with the realities of the procedures in condemnation. It could have been possible that a substantial period of time might have elapsed between the inclusion of funds in the budget and the actual vesting of title in the condemnor. Indeed, it was entirely possible that even after funds were included in the budget that the entire project might have been abandoned.

One more point should be mentioned. Plaintiff urges that since rent was not to accrue until the landlord obtained a temporary or final certificate of occupancy that therefore no rent is due and owing under the terms of the lease, the landlord not having obtained the certificate of occupancy.

However, the record is quite clear that because of the failure of the tenant to perform the work which it was obligated to do that a certificate of occupancy could not in fact be obtained. And it is to be noted that the tenant stopped work on the premises prior to the date rent was to begin. In such circumstances the landlord certainly was not required to take any further action with reference to a certificate of occupancy.

Accordingly, the judgment entered April 11, 1969 should be reversed on the law and the facts and the complaint dismissed, with costs and disbursements to appellant.

CAPOZZOLI, J. P., McGIVERN, MARKEWICH, McNALLY and TILZER, JJ., concur.

Judgment of the Supreme Court, New York County entered on April 11, 1969, unanimously reversed, on the law and the facts and the complaint dismissed. The defendant-appellant shall recover of plaintiff-respondent $50 costs and disbursements of this appeal.